560 P.2d 880
**The STATE of Idaho,
Plaintiff-Respondent,**

v.

**Dennis L. BROWN, Defendant-Appellant.**

**No. 11719.**

Supreme Court of Idaho.

March 4, 1977.

210

Darrel W. Aherin and Stephen C. Rice, Lewiston, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., P. Mark Thompson, Asst. Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

The defendant appellant Dennis L. Brown was charged with the crime of grand larceny. He was accused of stealing approximately 800 feet of ⅝ inch cable and approximately 2,000 feet of ½ inch cable from a logjammer owned by one of his former employers. The principal prosecution witnesses at trial were Monte N. and Margaret Thompson, who testified that they had been his accomplices in the theft. The Thompsons claimed that they had been in Brown's company during the late evening hours of November 29, 1973, and the

early morning hours of November 30, 1973, during which time they drove from Superior, Montana, to a logging area in Clearwater County, Idaho, where the logjammer was parked, took the cable from the logjammer, and returned to Superior.

Brown denied that he had been with the Thompsons during those hours and denied taking the cable. He called one witness, Larry Severson, who testified that he had been with Brown until approximately 10:00 or 11:00 p. m. on the night of the 29th, and that he had seen Brown at breakfast the following morning. Brown testified that after leaving Severson's company he had spent the next several hours with his friend Sharon Bird, not with the Thompsons. Bird, who was living outside of the state in Superior, Montana, at the time of trial, was not present to testify.[1] Accordingly, Brown had no alibi witness at trial to testify that Brown had been in Sharon Bird's company during substantially all of the hours that the Thompsons had testified Brown was with them.

During trial Brown's trial counsel learned that a deputy from the Clearwater County Sheriff's office had traveled to Superior, Montana, and taken a statement from Sharon Bird. At that time Brown's trial attorney asked to see the statement, but the prosecutor resisted the subsequent motion to produce it on the ground that he "ha[d] nothing to show or tend to show nothing in my possession, or that has come to my attention that has tended to show the innocence of this man, or to exculpate him from the offense with which he is charged." (Clk.Tr., Vol. 1, p. 109). The court then denied the defendant's motion on the ground that "if you [the prosecutor] don't have any such evidence, then obviously there is no point in ordering you to produce it . . . ." *Id.* The trial continued without the defense obtaining Sharon Bird's statement.

The jury returned a verdict finding Brown guilty of grand larceny. After receiving the verdict, the court ordered a presentence investigation and scheduled a sentencing hearing sixteen days later. At the sentencing hearing Brown informed the court that he no longer wished to be represented by the court appointed counsel who had been his trial attorney, but instead wished to be represented by another counsel. However, Brown had not been able to complete arrangements for a new counsel. The district court, who informed Brown that he intended to sentence him that day even if he was not represented by an attorney, then asked Brown whether he had any objection to the court allowing appointed counsel, who was present in the courtroom, to withdraw. Brown did not. The sentencing hearing then continued. Although court appointed counsel apparently remained present in the courtroom, he did not take part in the sentencing hearing because he had been allowed to withdraw at Brown's request.

At the close of the hearing the court sentenced Brown to an indeterminate term not to exceed five years. Brown has appealed. He argues upon appeal that he was denied his constitutional right to counsel when he was sentenced without being represented by counsel at the sentencing hearing and was denied his constitutional due process right to a fair trial when he was unable to examine the statement of Sharon Bird. We vacate the sentence and remand this matter to the district court to: (1) examine the statement of Sharon Bird and conduct a hearing concerning whether Brown's case was prejudiced when Bird's statement was not made available when requested at trial; and (2) conduct a new sentencing hearing at which Brown will be represented by counsel. We take these actions for the following reasons.

1. Brown testified that he had made two trips to Montana to ask Bird to testify on his behalf, but had been unable to find her. On the second of these trips, taken during the night between the two days of trial, he had first attempted to subpoena her. Apparently, no attempt had been made earlier to subpoena Bird. Nothing in the record indicates that the defense attempted to subpoena Bird under I.C. § 19–3005, the Uniform Act to Secure the Attendance of Witnesses in Criminal Cases.

■ First, regarding the right to counsel issue, Art. 1, § 13, of the Idaho Constitution provides that, "In all criminal prosecutions, the party accused shall have the right . . to appear and defend in person and with counsel." Criminal defendants in the state courts also enjoy a similar right under the decisions of the Supreme Court of the United States interpreting the Sixth and Fourteenth Amendments to the federal Constitution. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). By sentencing the defendant when he was not represented by counsel, the district court violated his right to counsel.

■ The state argues, however, that the defendant knowingly waived his right to counsel at the sentencing hearing. We disagree. The transcript of the sentencing hearing clearly shows that the district court informed the defendant that he would be sentenced that day even though his attempt to obtain new counsel had not resulted in anyone being present that day to represent him. The defendant's acquiescence under these circumstances was not a voluntary waiver of the right to counsel. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We agree with the state that a defendant may not indefinitely postpone trial or sentencing by continually changing counsel or arriving for hearings unrepresented by counsel. *United States v. Casey,* 480 F.2d 151 (5th Cir. 1973); *United States ex rel. Davis v. McMann,* 386 F.2d 611 (2d Cir. 1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968). However, in the absence of a knowing, intelligent and voluntary waiver of the right to counsel, the district court may not proceed with the sentencing hearing when the defendant is not represented by counsel without some evidence or finding that the defendant has discharged his counsel in order to delay or hinder the judicial process. The record here does not support such a conclusion. The record does disclose that before trial Brown had been displeased with his court appointed counsel but had been unable to retain other counsel. After trial he had asked to have his appointed counsel discharged and to retain other counsel. Under these circumstances he should have been granted a reasonable continuance to allow for new counsel to be retained and to be present at the sentencing hearing. The trial court could not proceed to sentence the defendant who was not represented without a showing of a voluntary waiver. Accordingly, the sentence is vacated and the matter remanded for a sentencing hearing at which Brown will be represented by counsel.

■ Brown's other assignment of error deals with the question of the potential prejudicial effect of denying him access to Sharon Bird's statement. The state argues that because Sharon Bird's statement was not covered by Brown's pretrial discovery requests, the state had no obligation to disclose it. This is not necessarily the case. Even when the defense has made no specific request for discovery, the prosecutor has a constitutional duty to disclose evidence that would create a reasonable doubt of guilt that did not otherwise exist. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976); *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "The suppression of . . . exculpatory evidence by a prosecutor [is] a denial of due process." *State v. Harwood,* 94 Idaho 615, 617, 495 P.2d 160, 162 (1972). But this was not a case where there was no request to see Bird's statement. During trial defense counsel clearly asked to see the statement when he first learned of its existence. In this circumstance, a stricter rule applies; as the Supreme Court of the United States said in *Agurs:*

"Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem

to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." 427 U.S. at 106, 96 S.Ct. at 2399.

In this case Brown testified that he had been in Bird's company during the time that he was accused of stealing the cable. She was the only person whom Brown could call who could be an alibi witness consistent with Brown's own testimony. Brown certainly had a substantial basis for claiming materiality of her statement, both for its content and for a current address of the witness Bird so that she could be subpoenaed to testify. Based upon *Brady* and *Agurs*, which established the constitutional standard which we must now follow, the court should have ordered the prosecutor to present the statement to the court for its examination and, in the absence of a compelling reason,[2] to make the statement available to the defendant.

■ The dissenting opinion quotes extensively from *United States v. Agurs, supra*, in support of the conclusion that no disclosure was required. However, the portion quoted was taken from that portion of the opinion which sets forth the standard for disclosure *where no request for disclosure has been made*. However, the defendant Brown made a specific request for the Sharon Bird statement. As the Supreme Court stated in *Agurs*:

> "The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made." 427 U.S. 106, 96 S.Ct. at 2398. (Footnote omitted).

The correct standard for determining whether Bird's statement should have been disclosed is not whether the statement if produced would have constituted evidence which would have ". . . create[d] a reasonable doubt that did not otherwise exist . . ."—the test in cases where no request for discovery of the particular evidence has been made. *Agurs*, at 112, 96 S.Ct. at 2401. The proper test to be applied in cases where a specific request is made is whether or not the failure to disclose has denied the defendant ". . . evidence [which] might have affected the outcome of the trial." *Agurs*, at 104, 96 S.Ct. at 2398. In the instant case, the fact that the statement might have disclosed an address where the witness could have been subpoenaed would have made it sufficiently material to "have affected the outcome of the trial." *Id.* The failure of the trial court to require the statement to be produced when specifically requested frustrates our judicial review, which no doubt accounts for the statement in *Agurs* that, "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." 427 U.S. at 106, 96 S.Ct. at 2399.

■ Although we hold the court erred in not requiring the prosecutor to produce Bird's statement, we cannot tell whether this error prejudiced Brown's defense because Bird's statement not being in the record, we do not know what it contains. However, because this matter is being remanded for another sentencing hearing, in the interest of judicial efficiency we direct that a hearing concerning the possible prejudicial effects of the prosecutor's failure to disclose Bird's statement be combined with the sentencing hearing rather than requiring the defendant Brown to initiate a separate proceeding for post conviction relief.

The sentence is vacated and the cause remanded for further proceedings consistent herewith.

McFADDEN, C. J., and BISTLINE, J., concur.

SHEPARD, Justice, concurring in part and dissenting in part.

I concur in that portion of the majority decision holding that the trial court erred in sentencing the defendant in the absence of

---

**2.** *See, e. g.*, I.C.R. 16(a)(1)(vi). For a comparable provision in the Federal Jencks Act, see 18 U.S.C.A. § 3500(c).

counsel and that therefore the sentence must be vacated and the cause remanded for a sentencing proceeding at which defendant is represented by counsel.

I do not read *Brady v. Maryland and U. S. v. Agurs* as requiring the result obtained in which the majority holds that the trial court erred in failing to require the prosecution to present a statement for at least the scrutiny of the court.

It will be remembered that what the prosecution had in its file in the instant case was the non-judicial statement of a person then out of the jurisdiction of the court. It is not indicated whether it was a sworn statement, but it was presumably taken by a prosecution investigator following the assertion of the defendant that he had been in the company of that person at the time the crime had been committed. I can perceive no basis whatsoever that such a hearsay statement, albeit in writing, could be considered "evidence", exculpatory, material or otherwise.

Likewise, I can see no basis for the "discovery" of what that person may have said to the prosecution investigator. Defendant clearly knew of the existence of that person. He not only claimed to have been with her at the time of his alleged participation in the crime, but the record reveals that he twice travelled to Montana in attempts to contact her. The court in *Agurs* stated:

"And this court recently noted that there is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' *Moore v. Illinois,* 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706. The mere possibility that an item of undisclosed information might have helped the defense, or might have effected the outcome of the trial, does not establish 'materiality' in the constitutional sense."

The petitioner in *Brady* was convicted of first degree murder which he was alleged to have committed with a companion. The prosecution had suppressed the confession of the actual murder by the companion. Even there, the circuit court decision was affirmed which had affirmed the determination of guilt, but reversed only on the question of punishment.

In *Agurs* the defendant had been convicted of manslaughter and asserted that the prosecutor's failure to tender the victim's criminal record deprived her of a fair trial. Her contention was rejected and the conviction affirmed. The court in *Agurs* summarized by saying:

"Unless every non-disclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted *evidence* creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that *the omission must be evaluated in the context of the entire record.* If there is no reasonable doubt about guilt whether or not the additional *evidence* is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional *evidence* of relatively minor importance might be sufficient to create a reasonable doubt.
\* \* \*

"Since the arrest record was not requested and did not even arguably give rise to any inference of perjury, since after considering it in the entire context of the entire record, the trial judge remained convinced of respondent's guilt beyond a reasonable doubt, and since we are satisfied that his firsthand appraisal of the record was thorough and entirely reasonable, we hold that the prosecutor's failure to tender Sewell's record to the defense did not deprive respondent of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment." (Emphasis supplied.)

Therefore in the case at bar I would not hold that *Brady* and *Agurs* require the dis-

closure of prosecutorial investigation results where those results do not rise to the level of "evidence."

DONALDSON, J., concurs.