605 P.2d 517

STATE of Idaho, Plaintiff-Respondent,

v.

Eugene L. McCOY, Defendant-Appellant.

No. 12346.

Supreme Court of Idaho.

Jan. 29, 1980.

754

R. M. Whittier, Issac McDougall, of McDougall & Gardner, Pocatello, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, P. Mark Thompson, Deputy Attys. Gen., Boise, for plaintiff-respondent.

DONALDSON, Chief Justice.

A petition for rehearing filed by respondent State of Idaho was considered and denied. The previous opinion is withdrawn and the following opinion is substituted therefor.

The defendant-appellant, Eugene McCoy, was a Bingham County magistrate. He served in this position from 1971 to December 23, 1974. On December 23, 1974 a criminal complaint was filed against McCoy charging him with four counts of embezzlement pursuant to I.C. § 18–2402.[1] Each of the four counts in the complaint charged that McCoy had appropriated or secreted certain money from Bingham County. The case went to trial and on December 13, 1975, a jury found McCoy guilty of each of the four counts. On April 12, 1976 the district court sentenced McCoy to a term in the state penitentiary not to exceed seven years. McCoy appeals his conviction and sentence.

The following is an outline of the facts and circumstances that are pertinent in this appeal.

The Bingham County Sheriff's and County Clerk's Offices had an arrangement whereby the Sheriff's Office would collect bail bonds and traffic citation fines when the Clerk's Office was closed, i. e. after regular business hours and on weekends. When an individual would post a bond or pay a traffic citation at the Sheriff's Office, a receipt would be prepared in duplicate. The original receipt would be given to the individual posting the bond or the traffic citation fine. A copy of the original receipt

1. "18–2402. Embezzlement by public and corporate officers.—Every officer of this state, or of any county, city, or other municipal corporation or subdivision thereof, and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

would be retained in the Sheriff's Office along with the money received. The following weekday the money received by the Sheriff's Office would usually be collected by someone from the Clerk's Office. No single individual from the Clerk's Office was assigned this particular task; however, the defendant McCoy was often the person who would pick up the money. Before the money was collected by the Clerk's Office, carbon copy receipts would be compared with the money to be collected. The person collecting the money would then initial the receipt to acknowledge receiving the money if there were no discrepancies between the amount shown by the receipts and the money to be collected. The money was then to be taken and deposited in the Clerk's Office. When the Clerk's Office received the money posted for each of the bonds or citations, entries were to be made in the Clerk's records. The records would reflect, among other things, the name of the person posting the money in the Sheriff's Office and the amount received from the Sheriff's Office. The records would not, however, reflect who had delivered the money to the Clerk's Office. It may also be noted that there was no mechanism or procedure by which the person depositing the money in the Clerk's Office would be credited or given a receipt for turning the money over to the Clerk's Office.

Sometime in mid-December, 1974, an audit and investigation of this bond and traffic citation posting system was conducted by Bingham County. The audit and investigation disclosed that some of the money which had been posted with the Sheriff's Office had not reached the Clerk's Office.

On December 23, 1974, the embezzlement charges were filed against McCoy. In essence, McCoy was accused of taking money from the Sheriff's Office and subsequently failing to turn the money over to the Clerk's Office.

McCoy appeals, pointing out some nineteen errors which he alleges were committed. We will discuss only those which we find meritorious.

McCoy claims he was denied a fair and impartial trial because certain exculpatory material was not produced and certain exculpatory facts were not revealed by the prosecution and made available to him prior to trial. Thus McCoy asserts that the district court erred by not granting him a new trial because of the non-disclosure prior to trial of this exculpatory evidence.

On August 8, 1975, McCoy filed a Motion for Discovery and Inspection of Documents, which requested, among other things, that the prosecution set forth a "Schedule of Tangible Objects" (including documents material to the preparation of the defense or intended for use by the prosecution as evidence at trial), and a "Schedule of Evidence Favorable to the Defendant." McCoy contends that the prosecution's failure to turn over or set forth in the evidence schedule: (1) a certain audit document (which we will refer to as exhibit 45); (2) an inventory of what was taken from his desk and office during a search conducted on December 18, 1974; (3) the audit of the Bingham County Sheriff's Office; (4) the audits of any other Bingham County offices disclosing mishandling of funds; and (5) the facts of any other irregularities in the Bingham County Sheriff's Office concerning money transactions, culminated in a violation of his due process rights and prevented him from preparing and developing an adequate defense in violation of his right to a fair trial. The most important item not available to McCoy and which his counsel did not have the benefit of examining and investigating was the audit document (exhibit 45). The existence of this item became known to McCoy only at time of trial. The state responds to McCoy's argument by asserting that it fully complied with the requirements of I.C.R. 16 and that McCoy's constitutional rights were not violated by the non-disclosure of these items prior to trial.[2]

---

2. The state claims to have fulfilled the disclosure requirements imposed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); and *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977).

The circumstances surrounding the late disclosure of exhibit 45 at trial are as follows: The state began its case in chief on the afternoon of December 4, 1975. The prosecution case continued through December 5, at which time the court recessed until December 9. It was during the state's case on the afternoon of December 9 that an attempt to introduce exhibit 45 was made by the state. Defendant objected to its introduction on the ground that it was not furnished to him pursuant to the pretrial discovery motions and orders. The objection was sustained and exhibit 45 was not introduced into evidence, but rather was used as a worksheet to refresh the memory of the witness then on the stand, Mrs. Christensen. It was at this time the defense was first furnished a copy of exhibit 45 for their use. The state finished its direct examination of Mrs. Christensen on the 9th and the following morning, December 10, the defense began cross-examination of Mrs. Christensen. The state rested its case in chief on December 10, 1975. The defense on December 10, 1975 moved for a mistrial including as one of the grounds the failure of the prosecution to furnish exhibit 45 prior to trial. The judge denied this motion and the defense began presentation of its case in chief on December 11, 1975. On December 12, the defense rested.

Exhibit 45 was a list of some 314 names of individuals who had posted money in the Sheriff's Office. Corresponding to each name on the list the document indicated, among other things, how much money had been posted by each of these individuals with the Sheriff's Office, the initials of the individual who collected the money for the Clerk's Office, and whether the Clerk's Office had a record of the bond or traffic citation and correspondingly a record of the money received. This audit document had been prepared during the course of the investigation and had been used by the Clerk's Office in determining what moneys were missing. The document disclosed that the Clerk's Office had no record of certain receipts and money which had been initialed and collected from the Sheriff's Office by McCoy. The document also disclosed that

certain receipts and money which had *not* been initialed and collected by McCoy were also missing from the Clerk's records. The complexity of exhibit 45 was such that some time was needed by McCoy to study it and thereby ascertain its significance.

Defendant's motion for discovery and inspection of documents read in part as follows:

"[T]he Prosecuting Attorney shall . . serve upon the Defendant a response setting forth each schedule hereafter required and if there is nothing to be described in such schedule, then the Prosecuting Attorney shall in any such schedule so state.

"[T]he Prosecuting Attorney · shall set forth in such response a schedule to be entitled Schedule of Tangible Objects containing a description thereof sufficient for the identification thereof and shall forthwith permit Defendant to inspect and copy or photograph the following:

All books, papers, documents . . . tangible objects . . . or copies or portions thereof which are in the possession, custody, or control of the Prosecuting Attorney and which are material to the preparation of the defense or intended for use by the Prosecutor as evidence at trial. . . .

"[T]he Prosecuting Attorney shall set forth in such response a schedule entitled Evidence Favorable to the Defendant containing a description thereof sufficient for the identification thereof and shall forthwith permit such Defendant to inspect and copy or photograph all evidence which is favorable to such Defendant within the possession, custody or control of the State, the existence of which is known or is available to the Prosecuting Attorney by the exercise of due diligence.

. . . . .

"That this be a continuing order and the Prosecuting Attorney shall timely file such sppplemental responses . . . and serve the same on such Defendant as may from time to time be required to correctly set forth all further and differ-

ent information obtained by the Prosecuting Attorney so that at least 10 days before the trial . . . such response and such supplemental responses . . shall set forth the information hereinabove required which is then known to the Prosecuting Attorney by the exercise of due diligence. . . .

"That nothing omitted from such response and such supplemental responses as so filed and served and nothing contained in a response . . . file[d] within ten days of trial be offered or admitted in evidence at the trial . . except for good cause shown . . . that the matter so omitted was not known to or available to the Prosecuting Attorney by the exercise of due diligence ten days before the trial . . . and that the offering thereof or the admitting thereof in evidence will not constitute undue surprise to such Defendant or prejudice the right of such Defendant to a fair trial."

A hearing was had on the motion August 18, 1975, at which time the following colloquy took place:

"THE COURT: What is the State's response to the motion?

MR. LARSON (for the state): All of the evidence that the State has picked up, including statements, and so forth, has been presented to Defense Counsel at earlier times. . . . The other evidence they seek has been supplied. . .

The exculpatory statements to which he is referring and exculpatory evidence to which Counsel has been referring are all within the transcript [of the preliminary hearing] and all well within his knowledge. We see no further reason for compliance. We feel the State has complied fully short of filing everything with the Court. It's all in the transcript and all in the Information, and so forth, Your Honor.

THE COURT: Well, did the State file a response to the motion?

MR. LARSON: We have not, Your Honor.

THE COURT: Would you do that?

MR. LARSON: We would be glad to, Your Honor."

The state did not make a written response to the above motion until September 17, 1975, at which time it referred only to certain matters brought out at the preliminary hearing; it did not recite the documents, statements, and other instruments which it planned to introduce, nor did it set forth any "evidence favorable to the defendant" in its possession, custody or control. September 18, 1975, defendant agreed to the trial date of September 23, 1975, but moved the court to exclude any written documents submitted by the state which had not been supplied pursuant to defendant's motion for discovery, or in the alternative, for dismissal of the information. At the hearing September 22, 1975, on the motion to exclude evidence or in the alternative for dismissal, the following transpired:

"MR. McDOUGALL (for defendant): There has been no written revelations since the 18th of August until the 17th day of September, 1975, at which time a partial list with vague references to things that had been said orally was delivered, and then again on the 18th, the following day, another partial list came, and then again this morning. . . . It's his job to make that written response. He has not done so, and for that reason we have made these motions. . . . [A]t this point in time, we are absolutely, completely in the dark of what is going to happen tomorrow.

. . . . .

MR. LARSON (for the state): [At the hearing August 18, 1975], there was a discussion concerning a motion to discover and to inspect documents, and as the Court will remember, the prosecution at that time stated unequivocally everything had been furnished to the Defendant, of which the prosecution was then aware. . . . . . There is no further new tangible evidence. . . . They certainly have all of the information that the prosecution has. . . .

. . . . .

THE COURT: Now, regarding the documentary evidence, the response, of course, refers to the Preliminary Hearing, and there are transmittal forms in the file, and ever since the Preliminary Hearing there has been a box of things that were used on the Preliminary examination in the hands of the Clerk and quite available to the Defendant. He is aware of what they are. The prosecution is going to have to rely on those documents which were known to the Defendant, and any that he has not furnished to the Defendant otherwise, I would not permit to be used on the trial.

.        .        .        .        .

MR. McDOUGALL: Your Honor, there is one other matter. As I understand it, there was some testimony on the 18th which was exculpatory in nature, and I'm wondering if there is anything else that is in the possession of Mr. Larson that is exculpatory. It's not mentioned in the writing anywhere. He says in his response that he knows of no such evidence. I take it that if we develop in Court that there was exculpatory evidence undisclosed, that a mistrial would be in accordance with the State versus Harwood.

THE COURT: Well, we will take that up when we come to it."

The essence of McCoy's assignment of error is that the non-disclosure until trial of the audit report and the other items heretofore mentioned, deprived him of an opportunity to prepare and develop an adequate defense thus violating his constitutional right to a fair trial. McCoy argues that had he been given this document prior to trial, thus giving him ample time to study and investigate the document, he could have discredited the charges against him. McCoy contends that had he been aware of this document or more importantly the fact that money was missing from the Clerk's Office which he had not collected from the Sheriff's Office, he could have developed a defense which would have placed a reasonable doubt in the minds of the jury concerning his responsibility for the missing money and ultimately his guilt. McCoy claims that had he had the audit document he could have developed a defense showing that bookkeeping procedures and internal controls in Bingham County were very loose and sloppy, thus making it difficult for the state to prove that he was responsible for the loss.

The question presented for our consideration is whether the belated disclosure of the various items of evidence resulted in a deprivation of McCoy's right to a fair trial as guaranteed by the fourteenth amendment of the United States Constitution.

█ Because we are here dealing with late disclosure, rather than a case in which the withheld information was discovered only after conviction, the standard of review in this case is that adopted by this Court in *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978):

"[Our inquiry on appeal] is whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *Id.* at 858, 859, 590 P.2d at 1005. (*quoting from U. S. v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976)).

It is important to highlight the critical facts with which we are confronted. This case presents a situation where:

(1) prior to trial defense counsel made a specific request for "all documents in the possession, custody, or control of the Prosecuting Attorney and which are material to the preparation of the defense or intended for use by the prosecutor as evidence at trial" and a general request for "all evidence which is favorable to the Defendant within the possession, custody, or control of the State, the existence of which is known .   .   .   to the Prosecuting Attorney."

(2) exculpatory or potentially exculpatory material was in the possession of the prosecutor;[3]

---

**3.** The material in question was not obviously exculpatory on its face but nevertheless exculpatory considering the defense posed by McCoy.

(3) the existence of the exculpatory material was unknown to defense counsel until after the third day of trial.

We point out that the untimely-disclosed evidence in this appeal, i. e. exhibit 45, was not obviously exculpatory on its face. Fn. 3, *supra*. However, the document did reveal that money was missing from the Clerk's Office which had not been handled by McCoy, and that was its real value to McCoy since it possibly could have been used to shift responsibility for the missing funds away from appellant.

The premise of the state's case against McCoy was that McCoy had received money from the Sheriff's Office and subsequently failed to deliver the money to the Clerk's Office. The evidence introduced by the state showed that McCoy had purportedly signed for the money and that the Clerk's Office had no record of receiving the money from McCoy. The state asked the jury to infer from these facts that since the money was missing from the Clerk's Office, McCoy was the responsible party.

The audit document (exhibit 45) indicates that the Clerk's Office had no record of various bonds, traffic citations, and accompanying Sheriff's Office receipts not collected by McCoy. Additionally, testimony of various witnesses indicates that money was handled loosely in both the Sheriff's Office and the Clerk's Office and there were few formal internal control procedures to avoid loss and theft of the money involved. One fact which we find particularly important is that there was no procedure whereby individuals depositing the money in the Clerk's Office could prove such deposit. Had McCoy been aware of the facts disclosed by exhibit 45 and had he had a full opportunity to investigate these other irregularities concerning the handling of money, McCoy may have been able to develop a defense which would have created a reasonable doubt in the minds of the jurors.

We again remind the state that "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977)

(*quoting from United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). We therefore hold that appellant's preparation or presentation of his defense was so greatly prejudiced by the lateness of disclosure of exhibit 45 that he was prevented from receiving his constitutionally guaranteed fair trial, and his conviction is reversed.

On remand, the state must disclose to McCoy any evidence, tangible or otherwise, which would tend to establish irregularities in the handling of money in the Bingham County Sheriff's and Clerk's Offices.

McCoy also claims the state made improper comments to the jury during closing argument in that the prosecution made reference to the fact that McCoy did not deny that the initials on the receipts were his and also by referring to matters not in evidence. McCoy's criticism of the state's closing argument is well taken. These comments alone would not support a motion for a new trial because the prosecution's reference to McCoy's failure to testify was inferential and the comments about matters not in evidence referred to rather inconsequential facts. The comments nevertheless constituted error.

Finally, McCoy takes issue with the last sentence of Instruction No. 16, which was:

"Every person of sound mind is presumed to intend the natural and probable consequences of his acts."

Since the time of trial in 1975, the United States Supreme Court handed down its decision in the case of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In that case, the trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," over objection that such instruction had the effect of shifting the burden of proof on the issue of purpose or knowledge. The question presented was whether, in a case in which intent is an element of the crime charged, such an instruction violates the requirement of the fourteenth amendment that the state prove every element of a criminal offense

beyond a reasonable doubt. Reversing the conviction, the Court stated:

"Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption like that in *Mullaney* [*v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508], or a conclusive presumption like those in *Morissette* [*v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288] and *United States Gypsum* [*United States v. United States Gypsum*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854], and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional." At 524, 99 S.Ct. at 2459–2460.

On retrial of this case, involving as it does an element of specific intent, the instruction to the jury that "every person of sound mind is presumed to intend the natural and probable consequences of his acts" should not be given.

Other issues raised by McCoy are either without merit or are unnecessary for discussion in view of our disposition of this matter.

Reversed and remanded for new trial.

BAKES, McFADDEN and BISTLINE, JJ., and SCOGGIN, J. Pro Tem., concur.