825 P.2d 1073

**Donald Kenneth FETTERLY,
Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 18966.

Supreme Court of Idaho,
Boise, September 1991 Term.

Dec. 19, 1991.

Rehearing Denied March 10, 1992.

Westberg, McCabe & Collins, Boise, for petitioner-appellant. Thomas J. McCabe, argued.

Larry J. EchoHawk, Atty. Gen., and Lynn E. Thomas, Sol. Gen., argued, Boise, for respondent.

McDEVITT, Justice.

This case arises from the murder of Sterling Grammer. Donald Kenneth Fetterly was convicted of first degree murder and was sentenced to death. Fetterly appealed his death sentence, and this Court affirmed. *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). He then filed a petition for post-conviction relief in the district court. The district court denied relief and this Court affirmed. *State v. Fetterly*, 115 Idaho 231, 766 P.2d 701 (1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989). Subsequently, federal habeas relief was denied. *Fetterly v. Paskett*, 747 F.Supp. 594 (D.Idaho 1990). Finally, the petitioner-appellant filed a second petition for post-conviction relief in the district court on June 15, 1990.

In the second petition, the petitioner-appellant argued that the district court, in the sentencing phase of his trial, did not weigh the mitigating circumstances against the aggravating circumstances in accordance with this Court's holding in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989). The State did not file a responsive pleading to this second petition. On June 26, 1990, petitioner-appellant filed an amended second petition for post-conviction relief. In it, petitioner urged as reversible error the fact that the sentencing judge considered

evidence relating to the petitioner-appellant that the judge had been exposed to during the trial of the petitioner-appellant's co-defendant, Karla Yvonne Windsor. The State did not file a responsive pleading to this amended second petition.

The petitioner-appellant filed a motion for summary disposition pursuant to I.C. § 19–4906(c). It was based upon "the State's failure to respond to the Petition" within thirty (30) days after the docketing of the petition, as required by I.C. § 19–4906(a). Petitioner also filed a notice of non-filing which stated:

COMES NOW the Petitioner, by and through his undersigned counsel of record, and hereby gives notice to Court and counsel that no additional affidavits in support of the Petition will be filed at the present time because Petitioner feels that the issues are fairly presented by the Petition, and the sworn statements found therein are sufficient to put the matter in issue.

The district court dismissed the second petition without providing any notice of its intent to do so. The petitioner-appellant then filed a notice of appeal on October 9, 1990.

■ The petitioner-appellant urges this Court to find reversible error in the State's failure to respond to the petition within thirty (30) days of docketing and in the district court's failure to provide twenty (20) days notice of its intent to summarily dismiss his petition. It is clear that I.C. § 19–4906(a) requires the State to respond within thirty (30) days of docketing. The purpose of this requirement is to properly frame any factual and legal issues before the district court so that it can make an intelligent ruling. *Cherniwchan v. State*, 99 Idaho 128, 130, n. 2, 578 P.2d 244, 246, n. 2 (1978). However, based upon the record before the district court, we cannot say that it could not "make an intelligent ruling on the application despite the State's failure to respond." *Cherniwchan*, 99 Idaho at 130, n. 2, 578 P.2d at 246 n. 2. The purpose of the twenty (20) day notice requirement is to give the petitioner "an opportunity to establish a material fact is-

sue." *State v. Christensen*, 102 Idaho 487, 489, 632 P.2d 676, 678 (1981). The petitioner-appellant's notice of non-filing specifically stated that he did not intend to make any additional filing, therefore, proceeding on the record then before the district court. We hold that this constituted a waiver by the petitioner-appellant of the twenty (20) day notice requirement.

In *State v. Rhoades* [Baldwin], 120 Idaho 795, 820 P.2d 665 (1991), this Court held that "I.C. § 19–2719 provides a defendant with one opportunity to raise all challenges to the conviction and sentence in a petition for post-conviction relief except in those unusual cases where it can be demonstrated that the issues were not known and reasonably could not have been known within the time frame allowed by the statute." The petitioner-appellant claims that the *Charboneau* interpretation of I.C. § 19–2515 was not a claim that was known or should have been known at the time of filing his initial post-conviction relief petition, and, if the Court found that it was, then it was ineffective assistance of counsel to fail to raise that issue.

■ In *State v. Charboneau*, 116 Idaho 129, 153, 774 P.2d 299, 323 (1989), we held that "the trial court may sentence the defendant to death, only if the trial court finds that all the mitigating circumstances do not outweigh the gravity of each of the aggravating circumstances found and make imposition of death unjust." Obviously, the *Charboneau* decision was issued after petitioner-appellant's initial petition for post-conviction relief. Thus, the claim that the *Charboneau* interpretation of I.C. § 19–2515 was not known or should not have been known misses the real issue. The real issue is whether *Charboneau* applies retroactively to cases that were final at the time of its issuance.

We have not applied the *Charboneau* decision to any case that was final prior to the issuance of *Charboneau* on April 4, 1989. Conversely, it has been applied to cases that were still open for sentencing on this date. The distinction between defendants whose cases were final before the issuance of *Charboneau* and those whose

cases were not is a valid distinction. In *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court recognized this distinction as a proper basis for denying retroactive effect of new rules to cases that are already final. Therefore, the *Charboneau* interpretation of I.C. § 19–2515 does not apply to the present case because the present case was final prior to the issuance of *Charboneau.*

Although our holding necessarily disposes of petitioner-appellant's ineffective assistance of counsel claim, we also note that this claim is one "that should be reasonably known immediately upon the completion of the trial and can be raised in a post-conviction petition." *Rhoades,* 120 Idaho at 807, 820 P.2d at 677. Because of the petitioner's failure to raise this claim in the first petition, the claim has been waived.

The appeal from the trial court's dismissal of petitioner-appellant's second petition for post-conviction relief is hereby dismissed.

BAKES, C.J. and BOYLE, J., concur.

JOHNSON, Justice, concurring in the result.

The State moved to dismiss this appeal for the reason that Fetterly is precluded by I.C. § 19–2719 from pursuing further proceedings with respect to the issues he has raised here. We granted argument on the motion to dismiss only and not on the merits of the appeal.

I concur in the dismissal of the appeal on the basis that Fetterly has not shown that the issues he has raised on appeal were not known and reasonably could not have been known at the time of his prior appeals and prior post-conviction petition.

1. *State v. McCoy,* 100 Idaho 753, 605 P.2d 517 (1980); *State v. Owens,* 101 Idaho 632, 619 P.2d 787 (1980). The interested reader will discover a gross miscarriage of justice upon inspection and comparison of those two cases. The Court refused to apply *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), in McCoy's case while applying it in Owens' case.

BISTLINE, Justice, dissenting.

## PROLOGUE

Retroactive, or prospective only, application of a new rule of law, is the theme of this Court's opinion in today's offering, *State v. Fetterly.* It comes before the Court on appeal from a judgment of the trial court denying Fetterly's attempt to obtain relief in a post-conviction action, otherwise known in the federal court system as a habeas corpus proceeding. The issues before us are rather simplistic, being basically pro and con as to whether a new rule of law will or will not apply to a convicted defendant whose status is yet pending on direct appeal, or, to equally extend that new rule to a defendant whose case is closed as to the direct appeal, but is yet subject to collateral appeal, *i.e.,* a defendant's action against the state seeking post-conviction relief from all or part of the judgment rendered against him. It is an important issue, and has been so viewed by the Supreme Court of the United States in language which is clear and unequivocal. To have such an issue before this Court is a welcome event. The course which this Court will elect to take remains to be seen. It is undoubtedly an issue which should be viewed with care and circumspection, as happened in *State v. McCoy,* but *not* in *State v. Owens* [1].

--------

My inability to join the opinion of Justice McDevitt is premised on the conclusion that *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989), does not apply to this case. It does apply and requires that the death sentence be vacated, and that the cause be remanded for resentencing. No error is asserted by Fetterly relative to the conviction.

*Sandstrom* was issued while both cases were pending on direct review before this Court and would have required the reversal of McCoy's conviction if it had been applied. The absence of a principled reason for the majority's decision to treat McCoy differently than Owens led to a dissent by one justice.

*Charboneau* held that I.C. § 19–2515(c) limited the district court's discretion as follows:

[T]he trial court may sentence the defendant to death, only if the trial court finds that all the mitigating circumstances do not outweigh the gravity of *each* of the aggravating circumstances found and make the imposition of death unjust.

*Charboneau*, 116 Idaho at 153, 774 P.2d at 333 (emphasis added).

The district court in this case stated its conclusion: "the mitigating factors do not outweigh the gravity of the aggravating circumstances so as to make unjust the imposition of the death penalty."

As shown above, the court did not weigh the mitigating factors against each of the aggravating factors; it weighed the mitigating factors against all of the aggravating factors. It is beyond cavil that the court in this case did not engage in the balancing procedure mandated by the legislature when it enacted I.C. § 19–2515(c).

Notwithstanding that clear violation of law, the majority declines to vacate the sentence because "[t]he distinction between defendants whose cases were final before the issuance of *Charboneau* and those whose cases were not is a valid one. In *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court recognized this distinction as a proper basis for denying retroactive effect of new rules to case that are already final." There are three problems with this analysis: 1) *Griffith* does not stand for the proposition stated by the majority, 2) this Court has never adopted *Griffith* as the law, nor is it required to fully adopt that case, and 3) under Idaho's current retroactivity doctrine, *Charboneau* is fully retroactive.

In *Griffith v. Kentucky*, 479 U.S. at 328, 107 S.Ct. at 716, the United States Supreme Court held that on appellate direct review, decisions announcing a new constitutional rule applicable to criminal prosecutions are to be applied retroactively to all cases pending on direct review or which are not yet final. The Supreme Court did not hold, as the majority suggests, that defendant-petitioners on collateral review can never benefit from the retroactive application of cases announced after their cases became final. As Justice Powell noted:

As the cases we decide today involve only the retroactivity of decisions pending on direct review, it was not necessary for the Court to express an opinion with respect to habeas corpus petitions. As I read the Court's opinion, this question is carefully left open until it is squarely presented.

479 U.S. at 329, 107 S.Ct. at 716 (Powell, J. concurring).

Soon after those words were written, the Supreme Court reformulated its retroactivity doctrine for cases on collateral attack by way of a petition for a writ of habeas corpus. It held that, in certain circumstances, new rules would be applied retroactively even to those cases which were final before the new rule was announced. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1990).

Another feature distinguishing this case from *Griffith* is that the latter case involved the retroactive application of a new constitutional rule, while this case involves the retroactive application of a case which interpreted a statute. The court in *Diggs v. Owens*, 833 F.2d 439 (3d Cir.1987), *cert. denied*, 485 U.S. 979, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988), held that *Griffith's* rule is limited to new rules of constitutional dimension. *Griffith* thus has no effect on this case because the *Charboneau* decision which we are asked to apply retroactively did not announce a new constitutional rule, it merely interpreted I.C. § 19–2515(c).

The California Supreme Court has declined to apply *Griffith* in cases where the issue was whether a decision of state law should be applied retroactively. It stated in *People v. Murtishaw*, 48 Cal.3d 1001, 258 Cal.Rptr. 821, 827, 773 P.2d 172, 178 (1989):

[W]e conclude *Griffith* applies only to rules based on the federal Constitution, or upon the federal judicial supervisory power. *Griffith* itself decided the retroactivity of a new federal constitutional rule.... In *Griffith*, the court expressly

addressed the framework for deciding the retroactivity of "new *constitutional* rules of criminal procedure".... *Griffith's* analysis proceeded on the assumption, among others, that "basic norms of *constitutional* adjudication" are violated when courts deny application of "a newly declared *constitutional* rule" to all pending litigants save the one whose case was used to announce it. (Id. [479 U.S.], at pp. 322–323, 107 S.Ct. at pp. 713–714, italics added.)

We need not extend this analysis to rules of criminal procedure derived solely from state law. As the United States Supreme Court stated long ago, "[t]he federal constitution has no voice upon the subject [of retroactivity of a new rule of state law]. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." (*Gt. Northern Ry. v. Sunburst Co.*, (1932) 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360.) *Accord People v. Carrera*, 49 Cal.3d 291, 261 Cal.Rptr. 348, 369–70, 777 P.2d 121, 142 (1989).

In sum, the majority's reliance on *Griffith* for the proposition that *Charboneau* cannot be applied retroactively to cases that were final when *Charboneau* was announced is not soundly premised. *Griffith* simply does not serve as a vehicle on which the majority can arrive at the sought destination.

Not only is *Griffith* inapplicable to this case, it has never been adopted as the law in Idaho. *Griffith*, in reaching its present holding, abandoned the High Court's earlier retroactivity rule set out in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Likewise, the Supreme Court abandoned *Linkletter* in habeas corpus cases in *Teague*. Prior to *Griffith* and *Teague*, the question in federal court of whether a case applied retroactively was determined by weighing, 1) the purpose of the new rule, 2) the reliance placed on the former rule and 3) the effect the retroactive application of the new rule would have on the administration of justice. 381 U.S.

at 636, 85 S.Ct. at 1741. *Linkletter* was a habeas corpus case, but the three pronged test was also used in direct appeals. *Johnson v. New Jersey*, 384 U.S. 719, 732, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882 (1966).

Idaho has used the *Linkletter* three pronged test in both direct appeals and collateral attacks to determine the retroactive effect of cases. *See e.g. State v. Whitman*, 96 Idaho 489, 491, 531 P.2d 579, 581 (1975) (a direct appeal where the Court cites *Linkletter*) and *Starkey v. State*, 91 Idaho 74, 76, 415 P.2d 717, 719 (1966) (a collateral attack where the Court cites *Linkletter*). But this Court has not heretofore adopted *Griffith*, nor are we required to apply it in cases like this one. Accordingly, it follows that we are not required to apply it in the instant *Fetterly* litigation. No reason has been advanced which would justify our seizing onto it in the circumstances here present.

Recently, this author on review of two direct appeals has decried the retroactive application of United States Supreme Court cases which restrict the level of constitutional protections. In *State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991), the majority applied *Payne v. Tennessee*, 498 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) retroactively. *Payne* overruled, in part, controlling precedent at the time of the defendant's sentencing hearing and diminished the level of protection under the eighth amendment. In *State v. Gallegos*, 120 Idaho 894, 821 P.2d 949 (1991), the Court gave retroactive effect to *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), which overruled *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and decreased the level of protection under the fourth amendment. In those dissenting opinions, it was advocated that the Court should apply its long-standing *Whitman* test to the question of retroactivity. *Card*, 121 Idaho at 461, 825 P.2d at 1117 (Bistline, J. dissenting), *Gallegos*, 120 Idaho at 900, 821 P.2d at 955 (Bistline, J. concurring in part and dissenting in part). The author continues to maintain the views expressed in *Card* and *Gallegos*.

The majority opinions in *Card* and *Gallegos* were strangely silent on the question of retroactivity. This *Fetterly* case provides an opportunity to ascertain where and what is the state of the law. Unfortunately, the majority inexplicably cites to *Griffith* which is undeniably inapplicable to this case.

Concededly, however, the Supreme Court in *Griffith* stated that its new retroactivity rule applies to both state and federal cases on direct review. To the extent that *Griffith* is used to ensure a minimum level of constitutional protection, it appears that this Court is bound by the Supremacy Clause (U.S. Const. Art. VI) to apply the rule in cases on direct review. For example, the earlier case applied retroactively in *Griffith, Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), increased the protections available to a defendant who believes the prosecution is systematically excluding members of his/her race from the jury venire by the use of preemptory challenges.

Conversely, *Griffith* does not, by its express terms, require state courts to apply decisions which disadvantage defendants retroactively. The Washington Supreme Court has observed:

> *Griffith* itself involved retroactivity of a new constitutional rule of criminal procedure beneficial to the defendant, and is replete with references to treating similarly situated defendants the same and providing all defendants whose cases are not yet final with the same benefits as the "lucky individual whose case was chosen as the occasion for announcing the new principle ..." (Citations omitted.) *Griffith*, 479 U.S. at 327, 107 S.Ct. at 716–17.
>
> *Griffith* is thus unclear as to whether its holding applies in cases where a new rule works to the disadvantage of the defendant.

*State v. Brown*, 113 Wash.2d 520, 543–44, 782 P.2d 1013, 1026 (1989).

As noted by the Washington court, *Griffith* does not require state courts to give full retroactive effect to those United States Supreme Court decisions which restrict the amount of constitutional protections previously provided. Additionally, the states have been and are free to provide greater protections under state law than those protections available under the federal constitution. *See Washington v. Chrisman*, 455 U.S. 1, 5 n. 2, 102 S.Ct. 812, 816 n. 2, 70 L.Ed.2d 778 (1982). Thus, although this Court is *required* to give full retroactive effect to those cases which increase the minimum level of constitutional protections (*e.g., Batson v. Kentucky*), it is *free to refuse* to give full retroactive effect to United States Supreme Court cases which diminish the level of constitutional protections (*e.g., Payne v. Tennessee* and *California v. Acevedo*).

The proper course today for this Court is to continue to adhere to its long standing test as stated in *State v. Whitman*, 96 Idaho 489, 491, 531 P.2d 579, 581 (1975). That test applies to both direct review and collateral attacks of criminal convictions, with the exception of those cases on direct review which seek the retroactive application of new rules of criminal procedure which increase the level of constitutional protections applicable to the citizens of Idaho through the fourteenth amendment. In those cases, this Court is obliged to follow the *Griffith* rule.

The majority's opinion should not be read as overruling our prior line of retroactivity cases. The State has not asked this Court to adopt a new retroactivity rule, rather it has only argued that *Charboneau* should not be given retroactive effect under our existing rule. Nor has the petitioner had an opportunity to point out to the majority the errors of its ways. Generally speaking, this Court over the years has not been a laggard insofar as protecting the guarantees of both the Idaho Constitution and the United States Constitution, of which a foremost example is the opinion of Justice Herman Taylor in *State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927).[2] It may be the Court

**2.** Just seven years ago in *State v. Hoak*, 107 Idaho 742, 692 P.2d 1174 (1984), it was written

in a dissenting opinion:

will someday fully embrace the *Griffith* rule. If we do, it will be in a case on direct appeal and only after full briefing by the parties.

Turning now to the factors of this Court's *Whitman* decision. First, the purpose of the *Charboneau* holding was to effectuate the intent of the legislature. This favors the retroactive application of the case. It was the legislature which decreed that all mitigating factors must be weighed against each aggravating factor. We noted then that:

> If the legislature had intended the mitigating circumstances to be weighed against all the aggravating found as a group, it would have referred to "the aggravating circumstances found." The plain meaning of the statute dictates our conclusion on this issue.

*Charboneau*, 116 Idaho at 153, 774 P.2d at 323. Apparently we were correct in our reading of the statute because the legislature has not seen fit to amend I.C. § 19–2515(c) during the last two years.

The second *Whitman* factor also favors retroactive application of *Charboneau.* There was no reliance on a prior rule because *Charboneau* was the first case to interpret I.C. § 19–2515(c). It would not be unfair to apply *Charboneau* retroactively because no one was relying upon a contrary rule.

As to the third factor, there will not be an adverse effect on the administration of justice if *Charboneau* is applied retroactively because very few prisoners will be able to mount a collateral attack on that basis. It appears from the information currently available to the Court, that the overwhelming number of prisoners on death row were sentenced or resentenced after the issuance of *Charboneau.* Of the twenty-one prisoners currently on death row, twelve (Ivey, Pratt, Porter, Fields, Leavitt, Card, Rhoades, Pizzuto, Fain, Hoffman, Paz, and Mark Lankford) were sentenced or resentenced after *Charboneau* was issued. Three prisoners (Creech, Sivak, and Bryan Lankford) are awaiting resentencing after having their sentences vacated. We have already held that *Charboneau* was not violated in *State v. Stuart,* 118 Idaho 865, 872–73, 801 P.2d 1216, 1223–24 (1990). Thus only five prisoners could possibly benefit from the retroactive application of *Charboneau,* two of which are Donald Fetterly and Albert Beam. Beam's case is currently before the Court. The administration of justice will not come to a standstill if the other three, McKinney, Paradis, and Gibson receive a review of their sentences in light of *Charboneau.* In this one justice's view, our time and effort should be spent on ensuring that all defendants sentenced to death have been afforded, and will receive full compliance with the sentencing procedure which the legislature has selected.

Having determined that the factors which this Court enunciated in *Whitman* favor the retroactive application of *Charboneau,* it follows that the district court erred in dismissing the petition. Fetterly is

---

I have pointed with the pride of a native Idahoan to *Arregui* decision, which in point of time predated the concerned involvement of the United States Supreme Court in the area of search and seizure. Sixty years ago the *Arregui* Court could

'see no such expediency for the enforcement of any law, as to justify violation of constitutional rights to accomplish it. The shock to the sensibilities of the average citizen when his government violates a constitutional right of another is far more evil than the escape of any criminal through the court's observance of those rights.' 44 Idaho at 58, 254 P. at 792.

In due time the High Court took up the same constitutional cudgel, but now in very recent times, with the High Court under a new stewardship, it has taken a turn to the contrary, changing the rules of the game in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and in *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). This Court in turn embraced those decisions, respectively, in *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983), and in *State v. Haworth,* 106 Idaho 405, 679 P.2d 1123 (1984). In both of those cases I suggested that a wise course might be a slower course.

*State v. Hoak,* 107 Idaho at 759–60, 692 P.2d at 1191–92. At the time *Arregui* was written, it was the law in Idaho, and generally elsewhere, that evidence was admissible against an accused if competent and relative irrespective of the manner in which it was obtained. *Commonwealth v. Tibbetts,* 157 Mass. 519, 32 N.E. 910 (1893); *State v. Myers,* 36 Idaho 396, 211 P. 440 (1922).

**424**

entitled to raise the issue on collateral review because *Charboneau* was not known to him at the time of his direct appeal and could not have reasonably been known to him at that time. Because the sentencing court did not engage in the proper weighing of each aggravating factor against the mitigating factors, as required by I.C. § 19–2515(c) and *Charboneau,* the holding of this Court this day should be to vacate the sentence challenged on the appeal and remand for resentencing.

## ON PETITION FOR REHEARING

BISTLINE, Justice, dissenting on denial of petition for rehearing.

Adhering to the view that *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989), applies retroactively, this Justice would vacate Fetterly's death sentence and remand the cause for a new sentencing hearing. Additionally, rehearing should be granted for the Court to reconsider the ineffective assistance of counsel claim.

Fetterly argues that his original counsel[1] was ineffective because he did not challenge the sentence under I.C. § 19–2515(c) during direct appeal on the first petition for post-conviction relief.

The Supreme Court has recognized two components necessary to a criminal defendant's claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense.... Unless a defendant makes both showings it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *see Gibson v. State,* 110 Idaho 631, 634, 718 P.2d 283, 286 (1986).

The majority discards Fetterly's claim by observing: 1) that the conclusion that *Charboneau* is not retroactive "necessarily dis-

poses" of the ineffective assistance of counsel issue, and 2) that the issue was waived because Fetterly's counsel should have known about the issue and raised it in the first petition.

As to the first observation, the majority apparently means that Fetterly was not prejudiced by his counsel's failure to raise the I.C. § 19–2515(c) issue because *Charboneau* would not have applied retroactively to that case. However, since *Charboneau* was not issued until after we issued the opinion in Fetterly's first petition, it is difficult to see how the question of *Charboneau's* retroactive effect would have affected that case at all. More to the point is that if Fetterly's counsel had raised the I.C. § 19–2515(c) issue, we undoubtedly would have interpreted the statute the same way we did just eight months later in *Charboneau* and Fetterly would have received a new sentencing hearing.

The majority's second observation, that the ineffective assistance claim is waived because it should have been brought in the first petition, is unsound. The question before us is whether counsel was ineffective because he failed to argue that Fetterly was not sentenced in accordance with I.C. § 19–2515(c). That question cannot be answered by saying the act constituting the ineffective representation also constitutes a waiver of the ineffective assistance issue. The majority apparently does not realize that Fetterly's counsel during his direct appeal and first petition was the same attorney who Fetterly now claims was ineffective. The majority cannot really expect Fetterly's former counsel to have argued he was ineffective in the first petition. Such a situation would be an obvious conflict of interest. As Fetterly put it:

> How can this Court say, given the foregoing scenario, that the ineffective assistance of counsel claim should have been raised in the first petition for post conviction relief? ... Was he supposed to realize he was ineffective in failing to interpret Idaho Code § 19–2515 in accordance with *Charboneau?* It is apparently the position of this Court that Peti-

1. Fetterly is represented by different counsel on    this petition.

tioner's original counsel should be able to sit around his office and spot not only those issues which should be raised on direct appeal, but also spot those issues he failed to raise the first time around. This ignores the facts that the allegation of ineffective assistance of counsel is built upon a premise that a second attorney steps into the case, reviews the prior attorney's performance, and finds some area in which the prior attorney was deficient.

Ultimately, the question for the Court is whether due process is satisfied when a capital defendant is provided appointed counsel and that appointed counsel fails to recognize his own errors when the original post conviction relief action is filed. If those errors can never be raised at any later time, then the original appointed counsel effectively becomes a participant in the death of the capital defendant, because the original counsel's failure to point out his own errors effectively insulates those errors from any later review.

In my view, the majority's disposition of the ineffective assistance of counsel claim is wholly inadequate. We should address the issue on the merits. If the majority were to do that, it would find that Fetterly has made out a claim of ineffective assistance of counsel.

No one disputes that the district court did not engage in the balancing procedure mandated by the legislature in I.C. § 19–2515(c). If counsel had raised that argument Fetterly would have received a new sentencing hearing. Thus, the first part of the *Strickland* test has been met.

Further, the loss of that sentencing hearing is a sufficient showing of prejudice to meet the second part of the *Strickland* test. Thus, for the reasons in my original dissent and the reasons raised in the petition for rehearing, I would grant rehearing, vacate the death sentence and remand for resentencing.