832 P.2d 311

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Raymond Allen ROLES, Defendant–
Appellant.**

No. 18822.

Court of Appeals of Idaho.

Jan. 27, 1992.

Rehearing Denied April 10, 1992.

Petition for Review Denied July 8, 1992.

Morton Law Offices and Nielson Law Offices, Boise, for defendant-appellant. Alan L. Morton and Gordon S. Nielson (argued).

Larry J. EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), for plaintiff-respondent.

SWANSTROM, Judge.

In March, 1990, a jury found Raymond Allen Roles guilty of rape, I.C. § 18–6101, –6107; first degree kidnapping, I.C. § 18–4501, –4502; aggravated assault, I.C. § 18–901(b), –905(b); and one count of forcible sexual penetration with a foreign object, I.C. § 18–6608. Before sentencing, Roles moved for a new trial. He then substituted counsel who filed an amended motion for a new trial asserting the following grounds: the prosecution failed to disclose exculpatory information, Roles received ineffective assistance of counsel and the jury was not instructed on Roles's theo-

ry of the case.[1] The motion was denied. On each of the crimes of rape, kidnapping and forcible sexual penetration with a foreign object, Roles was given an indeterminate life sentence with a fifteen-year minimum period of incarceration. He received a fixed five-year sentence for aggravated assault. All sentences were to run concurrently.

Roles appeals, raising the following issues. Did the trial court err by admitting expert testimony that the victim (AB) exhibited symptoms consistent with post-traumatic stress disorder (PTSD)? Were the jury instructions adequate? Is Roles entitled to a new trial based on his claim that he did not receive the effective assistance of counsel? Did the trial court err by failing to grant a new trial based on the state's belated disclosure of exculpatory evidence?

## FACTS

The state's evidence showed that AB and Roles had been dating for approximately a year and one-half prior to October 5, 1989, the day which gave rise to the charges. On October 5, AB and Roles were living together in a house owned by Roles's father. The two had attended a party where they used methamphetamine and drank alcohol. Later that evening they returned to their residence where AB informed Roles that she no longer wished to live with him and planned to move into a separate residence. AB told Roles that she did not want to bring him with her, as he had requested, partly because she was afraid of him. AB also informed Roles that she may be pregnant. According to AB's testimony, upon hearing about the possible pregnancy and her wish to move, Roles hit her in the face with his hand, threatened her life with a .22 caliber pistol and ordered her to disrobe. After she had complied, he tied AB's hands behind her back, tied her legs to opposite bed posts and taped her mouth shut. Roles then proceeded to beat her with a coat hanger and a leather belt and

then raped her. AB also said that Roles threatened her with another weapon, a .30 caliber carbine. She also testified that Roles sexually penetrated her with foreign objects. According to AB's testimony, Roles verbally abused her throughout the ordeal.

AB further testified that she did not attempt to leave the house until the next evening because of her fear of Roles. She explained that Roles had threatened to kill her and her family and had bashed in her car windows approximately a week earlier. AB related that she tried to escape on foot the evening of October 6, but that Roles had found her and forced her into the car he was driving by pretending he had a gun in his pocket. They then returned to the house. Finally, on October 7, AB called her mother, who picked her up.

AB's mother and an uncle took her to a hospital on October 10 where she was examined by an emergency room physician, Dr. Takasaki. Dr. Takasaki testified that, during his examination, AB maintained a blank stare and would not respond to questions. Dr. Takasaki said that AB had purplish marks around her ankles, approximately one-half inch wide. She had scratches and a large bruise on the right side of her abdomen. AB also had bruises on her breasts, earlobes and extensive bruises on her inner and back thighs. AB was admitted to the medical unit and later transferred to the psychiatric unit.

Dr. Brem, a psychiatrist, examined AB at the request of Dr. Takasaki. He testified that she appeared "emotionally flat." He also testified that many of the symptoms exhibited by AB were consistent with drug withdrawal, but he opined that they were most consistent with acute PTSD. Dr. Brem also testified that if the incident to which AB testified had been against her will and perceived as an attack, then it would be the kind of triggering device that would result in PTSD.

A licensed social worker with the Idaho Department of Health and Welfare, Rose

---

1. At trial, Roles was represented by a public defender. After the conviction, but prior to the filing of the amended motion for a new trial, two private attorneys were substituted as counsel for Roles, and they represent him in this appeal.

Moore, also testified that AB suffered from PTSD. Moore, who was qualified as an expert, based her opinion on her observations of AB which began on October 31, 1989, and continued up to the time of trial. In her first meeting with AB, Moore noted that AB was tearful, had difficulty conversing and when she did talk, would wander between different subject-matters. AB related to Moore her trouble sleeping, partly caused by nightmares of the incident. Moore outlined the criteria of PTSD according to the DSM III–R, a diagnostic statistical manual widely accepted by mental health professionals and stated how AB met the criteria of that manual. Moore testified that the criteria for PTSD are: (1) the experience, or close observation, of a life-threatening event, (2) the persistent re-experience of the event in one of four ways and (3) the persistent avoidance of stimuli associated with the event or the existence of a numbing of responsiveness.

Moore concluded AB suffered from PTSD because AB felt her life had been threatened during the incident and because AB re-experienced the incident through three out of the four recognized means. Moore testified that AB's re-experience was manifested through (a) recurrent and intrusive recollections of the event, (b) recurrent dreams of the event and (c) sudden acting or feeling as if the events were reoccurring or "affective flooding." Any one of these was sufficient to satisfy the second criterion, according to Moore. Finally, Moore testified that AB had tried to avoid thoughts and feelings associated with the incident and that she had a difficult time relating to Moore the facts, doing so only over a period of time.

Moore related that the symptoms AB exhibited are not just limited to people who have been in an abusive relationship, but are found whenever a person is subjected to extensive verbal and physical hardship, such as prisoners of war and people in certain religious cults. Defense counsel attempted to discredit Moore's testimony by showing that some of these same symptoms could have resulted from drug withdrawals or hallucinations. Furthermore, defense counsel noted psychiatric records

reflecting that AB had suffered from auditory and visual hallucinations since childhood.

Police Detective Anderson also gave his opinion that AB had suffered from PTSD. Detective Anderson stated that he first met AB on October 17, 1989, and stated that she appeared to be very withdrawn, paranoid and traumatized. He based those conclusions on his observations that AB would curl up in a defensive posture in the corner and shake. On cross-examination, Detective Anderson stated that he did not know the source of AB's stress. He agreed that similar stress symptoms could be due to methamphetamine withdrawal, however, he stated that such withdrawals should last only three or four days.

In his defense, Roles presented alternative theories that the alleged events of October 5 either did not occur or were consensual. During cross-examination, Roles's counsel tried to discredit the state's witnesses and infuse into their testimony his theory that the activities had not occurred. Roles's counsel attempted to persuade the jury that AB's account of the activities of October 5 was either fabricated or a result of hallucinations in the mind of AB, due to drug withdrawals.

The defense called Mark Gornik to testify on the effects of illicit drugs. Gornik is a licensed alcohol and drug evaluator and an outpatient alcohol and drug counselor. Gornik had seventeen years of personal use regarding the effects of illicit drugs and, as brought out on cross-examination, was a convicted felon. Gornik testified that use of methamphetamines for a week or so could possibly result in delusions, blackouts, hallucinations and generally two other types of behavior: paranoia and seclusion or anger and aggressiveness.

Alternatively, defense counsel attempted to show that the events AB testified to were consensual. Roles's counsel elicited testimony from AB and Roles that they had engaged in what Roles now characterizes as "kinky" or strange sex prior to October 5, 1989. AB admitted consenting to "bondage" with Roles on a prior occa-

sion and consenting to Roles's insertion of objects into her vagina on two or three prior occasions. Roles introduced this evidence in an attempt to show that the October 5 events described by AB were no less strange than the activities the two had consensually engaged in on prior occasions.

The defense also presented the testimony of a psychologist, Dr. Stoner, concerning sexual behavior. He stated that bondage and the insertion of foreign objects for sexual stimulation are relatively common, at least within the realm of deviant or unusual sexual practices. Dr. Stoner added that this behavior is typically, although not inevitably, consensual. Finally, defense counsel emphasized AB's delay in reporting the event and in leaving the house as further support for his theory that the incident was consensual.

## I. PTSD EVIDENCE

■ The first issue raised by Roles is whether it was error for the court to allow the state to present expert evidence regarding PTSD and that AB showed symptoms consistent with PTSD. Because there was no objection made at trial, this issue was not preserved for appellate consideration unless the admission of the testimony constituted plain error. I.R.E. 103(a)(1), (d). We have stated that "[t]he term 'plain error' when applied to a criminal case, is intended to embody the concept of 'fundamental error'—that is, error which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process." *State v. Koch,* 115 Idaho 176, 178, 765 P.2d 687, 689 (Ct.App.1988). *See also State v. Bingham,* 116 Idaho 415, 422–23, 776 P.2d 424, 431–32 (Ct.App.1989).

The decision to admit expert opinion evidence is within the discretion of the trial court and absent a manifest abuse of discretion we will not overrule the trial court's decision on such matters. *Bingham,* 116 Idaho at 423, 776 P.2d at 432 (citing *State v. Hoisington,* 104 Idaho 153, 165, 657 P.2d 17, 29 (1983)). Here, we refuse to consider whether the trial court abused its discretion, because, even if we were to conclude

that it did, such an abuse would not constitute fundamental error. Our Supreme Court stated that "[a]n abuse of discretion in admitting evidence is a trial error and does not go to the foundation of the case or take from the defendant a right which was essential to his defense." *Bingham,* 116 Idaho at 423,. 776 P.2d at 432. We will discuss the issue of the admission of the PTSD testimony below, however, because it constitutes one aspect of the ineffective assistance of counsel issue.

## II. JURY INSTRUCTIONS

■ The second issue Roles raises is that the jury instructions were insufficient and misdirected the jury. Roles challenges the instructions as a whole because (1) the defendant's requested rape instruction was not given, (2) no "theory of the case" instruction was given and (3) during the deliberations, the jury foreman posed two questions requesting clarifications of the instructions.

■ The jury was instructed in the language of the statute defining forcible rape and forcible sexual penetration with a foreign object, as follows:

### Instruction No. 15

Idaho Code section 18–6101 provides in pertinent part:

Rape is an act of sexual intercourse accomplished with a female under either of the following circumstances:

\* \* \* \* \* \*

3. Where she resists but her resistance is overcome by force or violence.

4. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution.

### Instruction No. 25

Idaho Code section 18–6608 provides in pertinent part: "Every person who causes the penetration, however slight, of the genital or anal opening of another person, by any object, instrument or device, against the victim's will by use of

force or violence or by duress, or by threats of immediate and great bodily harm, accompanied by apparent power of execution, for the purpose of sexual arousal, gratification or abuse shall be guilty of forcible sexual penetration by use of a foreign object.

Roles contends that the rape instruction given was error and that the defendant's requested instruction should have been given as a supplemental instruction.[2]

An instruction to the jury that essentially follows the words of a statute normally is not error. 'Ordinarily, the language employed by the legislature is deemed to be best suited for that purpose, and error cannot be predicated upon its use in informations and irstructions.'

*State v. Aragon,* 107 Idaho 358, 362, 690 P.2d 293, 297 (1984). The instruction proffered by Roles adds nothing more than emphasis to certain elements of the instructions already given. Requested instructions do not have to be given, even if they are correct statements of the law, where the subject matter is covered in other instructions actually given to the jury. *Id.* at 363, 690 P.2d at 298. *See also State v. Enno,* 119 Idaho 392, 807 P.2d 610 (1991). Because Roles's proposed instruction adds nothing essential to the instructions already given, we hold that the court did not err by refusing to give that instruction.

■ Roles also contends that the rape instruction given was improper. Roles bases this argument on *State v. Fowler,* 13 Idaho 317, 89 P. 757 (1907). In *Fowler,* our Supreme Court rejected an instruction given by the trial court which placed the burden on the defendant to show that sexual intercourse was committed with the consent of the woman. The Court in *Fowler* stated that the state has the duty to prove all of the facts and elements of the crime charged. In the instant case, there was no instruction similar to that given in *Fowler,*

which raised an inference that any sexual intercourse was non-consensual by placing the burden to prove the existence of consent on the defendant. In this case, the jury was further instructed that the defendant is presumed innocent and that the burden of proving guilt beyond a reasonable doubt is upon the state. Roles has not offered any persuasive support for his claim that the rape instruction constitutes error. Given the presumption that the language of the applicable statute utilized in jury instructions is ordinarily the best suited, we hold that the rape instruction adequately presents the elements of that charge. *Aragon,* 107 Idaho at 362, 690 P.2d at 297.

■ Roles further contends that a defendant's "theory of the case" instruction should have been given. A criminal defendant is entitled to submit his theory of the case to the jury under proper instructions. *State v. Johns,* 112 Idaho 873, 880–81, 736 P.2d 1327, 1334–35 (1987). The record shows that trial counsel did not object to the instructions given for lack of a "theory of the case" instruction nor was such an instruction presented to cure the alleged inadequacy. In order to prevail, therefore, Roles must show that the omission constituted fundamental error. *State v. Stevens,* 115 Idaho 457, 767 P.2d 832 (Ct.App.1989).

Roles asserts that this lack of a "theory of the case" instruction constitutes fundamental error because the rape instruction does not adequately address the relationship between resistance and consent. At the hearing on Roles's motion for new trial, Roles's present counsel suggested a "theory of the case" instruction including lack of consent as an element to be proven by the state and that the state must also prove that any resistance exhibited by AB, or force exhibited by Roles, was not part of any "sexual game."[3] The issue before this

---

**2.** Defendant's proposed supplemental instruction reads:

Even if sexual intercourse or other sexual activity is without consent, it is not rape or forcible sexual penetration by use of foreign object unless resistance is overcome by force or violence; or resistance is prevented by

threats of immediate and great bodily harm accompanied by apparent power of execution.

**3.** At the hearing on Roles's motion for a new trial, Roles's counsel proffered the following instruction as support for their claim that it was error for the jury not to be instructed on the defendant's "theory of the case":

**144**

Court, however, is not whether the "theory of the case" instruction drafted by Roles's counsel is proper, but whether the lack of such an instruction at trial was fundamental error.

In his brief, Roles suggests that, "[g]iven the bizarre sexual conduct of the parties, it is conceivable that an alleged victim could have feigned resistance, but actually tendered consent." There was testimony of "abnormal" sexual practices between Roles and AB, including one occasion of consensual bondage and other occasions of consensual insertion of foreign objects into AB's vagina. However, we do not find any evidence in the record demonstrating a prior history between AB and Roles to support the conclusion that when AB resisted in any fashion, she really intended to consent. We hold that the instructions given did not constitute fundamental error, but that they adequately presented the issues and law before the jury so that it could acquit or convict based on how it decided the facts.

■ Finally, Roles asserts that the jury instructions, taken as a whole, are unclear. Because the jury presented two questions about instructions to the court during deliberations, Roles contends that this showed extensive confusion on the part of the jury. No other argument or authority is given for this assertion. *State v. Burris*, 101 Idaho 683, 619 P.2d 1136 (1980). After considering the instructions individually and as a whole, we conclude that the instructions are clear and exhibit no reversible error.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The third issue raised by Roles is that he was afforded ineffective assistance of counsel and thus is entitled to a new trial.

You are instructed, Ladies and Gentlemen of the Jury, that if you find from the facts that the parties engaged in abnormal or kinky sexual activity which involved consensual acts or would otherwise be considered resistance, then you may find the Defendant guilty only if, (a) there was, in fact, no consent, real or

In his brief, counsel for Roles contends that Roles's representation at trial was ineffective and constitutionally deficient because Roles's trial counsel failed to object to the PTSD testimony and to approximately fifty other questions or statements. Roles also contends that his trial counsel's assistance was ineffective because the jury instructions were not properly framed to address Roles's theory of the case and because Roles was never given the opportunity to be questioned regarding the chronology of events at issue.

We note that this appeal is not pursuant to the filing of a petition for post-conviction relief, nor was an evidentiary hearing held or an affidavit obtained regarding the theories, tactics, or strategies of Roles's trial counsel. *See, e.g., Russell v. State*, 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). It is therefore very difficult to review the performance of counsel based on the record before us which consists primarily of the transcripts of trial and the hearing on the motion for a new trial.

■ To prevail on a claim of ineffective assistance of counsel, the appellant must show that his counsel's representation was deficient and that the deficiency prejudiced him. *Russell v. State, supra* (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Aragon v. State*, 114 Idaho 758, 760 P.2d 1174 (1988)). In the determination of whether deficient performance occurred, there is a strong presumption that the performance by counsel was within the " 'wide range of professional assistance.' " *Aragon*, 114 Idaho at 760, 760 P.2d at 1176 (quoting *Strickland v. Washington, supra*). Prejudice is presumed in a few instances, such as lack of counsel altogether, or a conflict of interest on the part of counsel. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. Such a circumstance is not

implied, and (b) that the resistance was not a part of the sexual game, and (c) that the resistance was such that it was overcome by force or violence or threats of real immediate and great bodily harm accompanied by the execution that were not a part of the sexual game.

present in this case, therefore, prejudice must be established by Roles.

In order to establish that the deficiency prejudiced his case, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. In the determination of this issue, we "must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S.Ct. at 2069. Furthermore,

> strategic or tactical decisions made by trial counsel will not be second guessed on review, unless those decisions are made upon a basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation.

*Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App.1989) (citations omitted).

### A. Failure to Object to Admission of PTSD Evidence

■ Roles contends his trial counsel was ineffective in failing to object to the introduction of expert testimony referring to PTSD and rape trauma syndrome (RTS).[4] There is authority holding that evidence of PTSD or RTS is unfairly prejudicial when the *sole* purpose of the prosecution is to bolster the victim's credibility and show that a rape occurred. *See generally People v. Taylor*, 75 N.Y.2d 277, 552 N.Y.S.2d 883, 552 N.E.2d 131 (1990); Annotation, *Admissibility, at Criminal Prosecution, of Expert Testimony on Rape Trauma Syndrome*, 42 A.L.R.4th 879 (1985). Roles argues that his trial counsel was deficient for failing to object because the PTSD testimony was proffered solely to bolster AB's credibility and to prove that a rape did occur. We disagree with his assertion and its underlying premise.

The state does not deny that bolstering the credibility of AB was a benefit of the introduction of the expert's testimony about PTSD. However, the evidence was also used for other reasons. At trial, Roles's counsel took the opportunity to make his opening statement to the jury before the state called its first witness. He told the jury the evidence would show that AB could have left the house or called for help earlier if she had actually been assaulted and raped. He portrayed AB as a heavy drug user experiencing withdrawals, which would explain her behavior and mental condition following the alleged assault. He named two experts who would testify about the "delusional effects" of drugs and about consensual rough sexual practices, which could account for AB's physical condition. Given those defense approaches—which appear to be valid and competent tactical arguments—it follows that the state is entitled to explain the odd behavior and delay in reporting the crime on the part of AB in a manner consistent with the charges. *People v. Taylor, supra.*

There are many jurisdictions that allow evidence of PTSD or RTS in cases of rape. There is also extensive literature discussing these diagnoses suggesting acceptance within the field of mental health which lend support for its reliability.[5] Some cases have approved expert witness testimony that, not only the victim showed signs consistent with PTSD or RTS, but that in the expert's opinion, the stress had been caused by rape. *See State v. Liddell*, 211 Mont. 180, 685 P.2d 918 (1984); *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982). We note that neither Moore, Dr. Brem, nor Detective Anderson testified regarding their views as to the cause of AB's stress or whether she had in fact been raped.

In *State v. Hester*, our Supreme Court agreed with a trial court's admission of

---

4. We did not find any reference in the record to "RTS." The witnesses at trial only testified using the PTSD terminology. We note that the term "RTS," which Roles equates with PTSD, was not used at trial, and that it is more inflammatory than PTSD. *See State v. Ciskie*, 110 Wash.2d 263, 751 P.2d 1165, 1169 n. 1 (1988).

5. For a discussion of some of the literature on PTSD and RTS see *Taylor*, 552 N.Y.S.2d at 885–87, 552 N.E.2d at 133–35; *State v. Marks*, 231 Kan. 645, 647 P.2d 1292, 1299 (1982).

expert opinion testimony that a child had been abused. 114 Idaho 688, 760 P.2d 27 (1988) (conviction reversed on other grounds); *see also* I.R.E. 702. The Court stated that the determination of child sexual abuse is " 'beyond common experience' and allowing an expert to testify on this issue will 'assist' the trier of fact." *Hester*, 114 Idaho at 693, 760 P.2d at 32 (citations and footnote omitted). The Court concluded

> the expert's function is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror.... Certainly, the behavioral patterns of young victims of incest or child molestation fall into that category.

*Hester*, 114 Idaho at 694, 760 P.2d at 33 (citations omitted) (quoting *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73, 76 (1986)).

In the present case, the testimony at issue was not as damaging to Roles as that admitted in *Hester*. None of the experts testifying in this case gave an opinion that AB had been raped, or whether she was testifying truthfully. Detective Anderson merely agreed that AB suffered from PTSD. Rose Moore and Dr. Brem testified that AB suffered from acute PTSD and that such stress symptoms are consistent with, but not necessarily the result of, the account of the events related by AB. These witnesses did not testify that AB had in fact been raped, although such conclusive expert opinion testimony has been upheld by our Supreme Court in the case of child sexual abuse. *State v. Hester, supra.*

The reasoning utilized in *Hester* is also applicable to the present case, even though the victim in this case is an adult. The determination of whether an adult has been sexually abused or raped is likewise "beyond common experience," and the admission of expert testimony on the issue would "assist" the trier of fact. Just as a child who has been a victim in a sexual crime is often defenseless and in a far less powerful position than the perpetrator, so too is the adult victim of rape and related crimes often in an inferior position.

Here, the state's evidence presented horrifying events of physical and mental abuse, assuredly "beyond common experience": being bound by the ankles, gagged, threatened with firearms, gouged, beaten, bruised, scratched and sexually assaulted. Expert testimony to help explain unusual behavior by the victim following such an incident would be helpful to the trier of fact, where the defendant attributes the unusual behavior to other causes, as Roles did. This testimony was helpful to explain the delay in reporting the incident and the delay in AB's efforts to flee. We deem this evidence admissible and therefore we cannot conclude that defense counsel's failure to object to the evidence constituted defective representation. Furthermore, Roles has not shown the second prong required by *Strickland,* that, but for the expert PTSD evidence he would have prevailed. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. We hold that Roles has not shown that he received ineffective assistance of counsel based on this claim.

■ In a separate but related issue, Roles asserts that error occurred when his trial counsel failed to object to the final question the prosecutor asked Detective Anderson, that is, if he thought AB was suffering from "posttraumatic stress syndrome." Predictably, the answer was "Yes." Roles now contends that this testimony should have been excluded because no adequate foundation was laid for Anderson to give such an opinion. Because no timely objection was made and the error is not of a fundamental nature, we will discuss the issue only in context of the claim of ineffective assistance of counsel.

The record reflects that Detective Anderson had worked in law enforcement for sixteen and one-half years, that at the time of trial he worked in the Crimes Against Persons Division and that he held a master's degree in education with emphasis in guidance counseling. The record shows, however, that the prosecutor failed to establish testimony from Detective Anderson of any prior experience with people who had suffered from PTSD or similar disorders, or his familiarity with any relat-

ed scientific studies or literature. No adequate foundation was laid. *See* BELL, *Handbook of Evidence For the Idaho Lawyer* at 245–46 (3d ed. 1987) (citing Idaho Evidence Committee Partial Comment to Rule 702).

Nevertheless, in view of the extensive informed testimony from two competent witnesses, Dr. Brem and Rose Moore, regarding PTSD—which we hold was properly admitted—the harm resulting from Detective Anderson's testimony is inconsequential. *Pacheco v. Safeco Ins. Co.*, 116 Idaho 794, 780 P.2d 116 (1989). Because the failure to object to Detective Anderson's testimony was harmless, we refuse to characterize it as deficient representation.

*B. Assorted List of Failures to Object*

█ The second factor that Roles contends establishes his charge of ineffective assistance of counsel was the failure of trial counsel to object to approximately fifty questions and statements which are outlined in an appendix to his brief. The vast majority of these are within the realm of trial tactics and strategy and is the exclusive domain of trial counsel. *Davis v. State, supra.* In his brief, Roles has highlighted some of the more "blatant" failures to object and we will address each of those in turn.

Roles contends that his trial counsel should have objected to AB's testimony of a previous "rape" by Roles. This evidence came in when the state asked AB about the events of October 5. AB related that Roles had interrogated her and had accused her of engaging in sex with another man. According to AB, Roles demanded the man's name:

Q. [Prosecutor] All right. Did you tell him anyone?

A. [AB] I told him [DK], but I never had sex with him.

Q. Okay. Why did you use the ... name [DK]?

A. Because he sexually assaulted me one time up by Warm Lake and [DK] was in the tent with us.

Q. Okay. Did you just do that to try to get him to stop hitting you?

A. Yes.

This was a brief and passing reference implicating Roles in an unexplained incident characterized as a "sexual assault" allegedly occurring in the presence of another person, (DK). To refer to this incident as a rape appears to be an expansion of AB's actual statement. Trial counsel for Roles may well have made the tactical decision not to object and move to strike, so as not to draw further attention to the passing reference. We will not second-guess trial counsel's decision not to object to and move to strike this testimony. *Davis v. State, supra.* Furthermore, even if the testimony was objectionable, Roles has not established that its admission prejudiced him by showing that the outcome of the trial would have been different had the testimony been stricken.

Alternatively, Roles argues that the evidence of the prior "sexual assault" was potentially exculpatory and could have been exploited to support one of his alternative theories of the case: that Roles and AB had engaged in similar sexual relations where he prevailed upon her and she consented but showed signs of resistance. As exculpatory evidence that was not disclosed by the state, Roles asserts that the evidence should not have been admitted. We discuss this issue below under its own heading.

Roles also contends that his trial counsel should have objected to testimony by AB that Roles "shot and killed her dog and nailed it to a door." The record actually shows that AB never testified about this at trial, rather, the evidence came in on cross-examination of Roles. Roles admitted to having killed the dog and sticking its tail on the door. However, he pointed out that it was his dog. We are not shown that this was improper cross-examination.

█ Roles further asserts that trial counsel should have objected to testimony regarding blood tests conducted on two of the foreign objects allegedly inserted into AB's vagina. He claims that the evidence was not relevant and lacked any probative

value because no causal connection was shown between the blood and the victim. The two objects, a flashlight and a toilet plunger, were tested for traces of semen and blood. The semen tests proved negative. The two items tested positive for blood; however, the amount of blood detected was insufficient to conduct a blood grouping test.

Upon cross-examination, the state's forensic expert admitted that she could not state conclusively even that the blood was human. The lack of identity of the blood as human or within a particular human grouping goes to the weight of the evidence and not its admissibility. This is because the fact that the blood cannot be more specifically identified does not totally eliminate its relevance. I.R.E. 401. We conclude that this evidence was properly admitted and that defense counsel's want of objection was neither deficient nor prejudicial.

The enumerated list outlined in the appendix to Roles's brief contains many statements and questions which Roles's trial counsel did not object to. Included in the enumeration are alleged leading questions, hearsay statements and other evidence. We have reviewed them in context. We need only note that counsel has broad discretion when formulating strategy and tactics prior to and during trial. *Davis v. State, supra.* As stated before, we will not second-guess Roles's trial counsel's decisions absent evidence of "inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *Id.* We also note that when the district judge denied Roles's amended motion for a new trial, he commented that, in his extensive experience viewing many competent counsel, he has observed "some [counsel] object to virtually everything that is offered upon which an objection can be framed, some object to virtually nothing as use of a trial tactic and depending upon the trial of the facts, each is a valid approach."

### C. Failure to Object to Jury Instructions

The third ineffective assistance of counsel charge was the failure of Roles's trial counsel to object to the jury instructions. Roles insists that his theory of defense was not adequately presented to the jury through the jury instructions because the relationship between resistance and consent, with regard to rape, was not fully explained. According to Roles, if the events described by AB occurred, then they were consensual. Roles also asserts that the two parties had previously engaged in "abnormal" sex and, although AB may have resisted to a certain extent, that resistance was understood by the two to really mean consent.

We cannot agree with Roles's argument that a more expansive instruction should have been given to the effect that resistance on the part of AB may have been intended as and understood to be consent. Evidence supporting such an instruction is not in the record. We are not persuaded that AB's testimony, mentioning a sexual assault in July, 1989, supports Roles's theory. We see no indication in the record that AB or Roles testified that any resistance by AB to the October 5 assault really constituted consent, or that the parties had established a prior course of conduct to that effect. Furthermore, according to the evidence, Roles did not make the kind of advances on October 5 that could be characterized as part of a "sexual game," as he now argues.

AB testified that she not only had been tied with rope resulting in bruises, gagged with duct tape across her mouth, beaten and sexually assaulted, but that Roles had also pointed two guns at her. AB also testified that she believed the guns were loaded, because to her knowledge, Roles always kept his guns loaded. The argument that these actions by Roles had resulted in "feigned" resistance by AB pursuant to a "sexual game" is totally devoid of factual foundation. We hold that Roles has not shown that the lack of an objection to the jury instructions as a whole by his trial counsel constituted deficient representation. *Strickland v. Washington, supra.* This holding negates the need for an analysis of the prejudice prong of *Strickland.*

### D. Questioning Defendant on Chronology of Events

The final factor Roles alleges as ineffective assistance of counsel was the failure of trial counsel to question Roles on the chronology of the key events. However, Roles was questioned about the events on October 5, 1989. He testified that he and AB had left a party around 3:00 a.m. with a case of beer; that he ate some "chow" and then went to sleep on the couch while AB had paperwork "all over the place," and she had said, "I have something I have to do;" that he woke up between 2:00 and 2:30 p.m. and observed that AB was gone; that he went to sleep at approximately 11:00 p.m., awakening between 7:30 and 8:00 a.m. on the morning of October 6, to find AB talking on the telephone informing her employer that she was sick. We conclude that Roles's trial counsel was adequate in questioning him. We hold that Roles has not proven this claim of ineffective assistance of counsel.

### E. Cumulative Effect

■ In addition to arguing the above points separately, Roles also contends that the alleged mistakes by trial counsel cumulatively denied him a fair trial. We disagree. As we have stated above, Roles has failed to show that trial counsel's performance was deficient, as required by the first prong of *Strickland*. Although we need not address the second prong of *Strickland*, we point out that Roles has also failed to show the level of prejudice required, that had the alleged deficiencies not occurred, the result of the trial would have been different. The amount of evidence supporting the prosecution was substantial. We note from the record, that AB's recollection was clear and she answered questions directly. In addition to a poor recollection, Roles had basically admitted to the acts alleged by AB. In an interview with Detective Anderson, Roles first indicated that his drug use was to blame for the events AB described. Detective Anderson testified that Roles had also stated that, "if

[AB] said that he was responsible for doing those things then he was." In addition to the testimony of the parties, the state presented the testimony of doctors and photographs of AB after the incident which were consistent with the types of injuries and bruises she had testified to. The state introduced into evidence the various physical objects used by Roles in the incident which AB had described.

Defense counsel tried to elicit testimony from AB that she had fallen in Roles's cluttered backyard on the night in question, as a means of explaining the bruises and scratches. AB denied that she had fallen. We note that a reasonable jury would most likely not believe that such extensive and varied bruises occurred as the result of a fall. We hold that Roles has failed to prove both prongs of his ineffective assistance of counsel claim.

## IV. WITHHOLDING OF EXCULPATORY EVIDENCE

■ The fourth issue Roles raises is that he is entitled to a new trial because he was denied a fair trial as a result of the state's failure to disclose exculpatory evidence, namely, that AB had informed the state she had been sexually assaulted on a prior occasion by Roles. Roles correctly points out that prosecutors have a constitutional duty under the due process clause to disclose to defendants exculpatory evidence in their control. *State v. Aragon,* 107 Idaho 358, 366, 690 P.2d 293, 301 (1984).[6]

Because appellate counsel for Roles concedes that the instant case is one of late disclosure and not a case where the withheld information was discovered only after conviction, the scope of our inquiry is limited to " 'whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.' " *State v. McCoy,* 100 Idaho 753, 758, 605 P.2d 517, 522 (1980)

---

6. Roles has not offered the additional support of I.C.R. 16 for this issue. Apparently, a prosecutor's duty under the due process clause is coextensive with that under I.C.R. 16. *State v. Merrifield,* 109 Idaho 11, 13 n. 1, 704 P.2d 343, 345 n. 1 (Ct.App.1985).

(quoting *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978)). The information belatedly disclosed in *McCoy* was an audit document with over 300 entries of specific names, with additional notations next to each name.

The late information disclosed in the case before us was not a detailed document, but rather a single statement that Roles had sexually assaulted AB once before. Without explaining how he was prejudiced, Roles simply asserts that the late disclosure of the evidence prejudiced his defense and prevented him from receiving a fair trial. The evidence came out upon the examination of AB, the state's first witness. Roles does not explain why he could not have utilized this evidence in the presentation of his case.[7] Absent a showing that the late disclosure prejudiced Roles, we cannot conclude that he was thereby denied a fair trial.

 In their briefs, counsel concentrated their arguments on whether or not the information was exculpatory, therefore, we will address that issue. Evidence is exculpatory if it would have created a reasonable doubt of guilt that did not otherwise exist, had it been known. *Aragon*, 107 Idaho at 366, 690 P.2d at 301 (citing *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977)). The refusal to disclose exculpatory evidence will constitute a denial of due process only when the exculpatory evidence has been shown to be "material." *Aragon*, 107 Idaho at 366, 690 P.2d at 301 (citing *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Our Supreme Court quoted key language from *Agurs, supra:* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Aragon*, 107 Idaho at 366, 690 P.2d at 301.

Roles argues that if the evidence of the prior sexual assault had been explored at trial, it "would have established a prior course of conduct between the parties, specifically, that Plaintiff and Defendant were not engaged in activities of non-consensual violence and rape, but rather that the parties were engaged in 'consensual rough and kinky' sex." We agree with the district judge's conclusion during the hearing on the amended motion for new trial that the evidence likely would have had no effect upon the trial, or perhaps it would have adversely affected Roles. That is to say, the evidence is not exculpatory, but rather inculpatory. We are not persuaded by Roles's argument that the evidence is materially exculpatory.

## V. MOTION FOR NEW TRIAL

Roles argues that the district court erroneously denied his amended motion for a new trial. A trial court's decision of whether to grant a new trial will not be disturbed on appeal absent an abuse of discretion. *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982); *State v. Brazzell*, 118 Idaho 431, 797 P.2d 139 (Ct.App.1990). As we have discussed above, the performance by Roles's trial counsel has not been shown to be deficient, nor has the required prejudice been shown to be a result of counsel's alleged errors. Roles has not shown that the testimony of a previous sexual assault and the lack of a formal report of that alleged incident, constituted exculpatory evidence. Roles did not show that any prejudice to his case was caused by late disclosure of that evidence. In addition, the jury instructions were proper. Based on the record before us, we conclude that the district judge did not abuse his discretion in denying Roles's amended motion for a new trial.

---

7. In a civil action between Roles and AB, Roles took AB's deposition. Roles's present counsel was involved in taking the deposition and it was made a part of the record in connection with Roles's amended motion for a new trial. AB was asked about the prior "sexual assault" which she had mentioned in the criminal trial.

Thus, although the record in this appeal contains details about the alleged prior assault which were not brought out at trial, Roles has made no cogent argument explaining how this evidence would have been helpful to his defense.

## CONCLUSION

The PTSD evidence was relevant and admissible to explain AB's delay in reporting the incident and in leaving the house, as well as explaining her odd behavior after October 5, 1989. The PTSD evidence was not unfairly prejudicial. Therefore, trial counsel's general failure to object to such evidence was not indicative of ineffectiveness of counsel. The jury instructions were proper and Roles was afforded effective assistance of counsel. Roles has not shown any prejudice to his defense resulting from the late disclosure of the prior sexual assault evidence. We find no error requiring reversal. We conclude that Roles received a fair trial. Therefore we affirm the judgment of conviction and the denial of the motion for new trial.

WALTERS, C.J., and BENGTSON, J., pro tem., concur.